UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| VIDHI LLC d/b/a Clarion Inn Michigan City, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CASE NO. 3:18-CV-451-JD-MGG<br>)<br>) |
| ARCH INSURANCE COMPANY d/b/a Arch Specialty Insurance Company, | )<br>)<br>) |
| Defendant. | ) |

**OPINION AND ORDER**

After denying Defendant's motion for summary judgment, the Court referred this case to the undersigned for a judicial settlement conference. [DE 38, DE 39]. After two telephonic conferences [DE 41, DE 42] attempting to schedule the settlement conference, the undersigned is persuaded that the parties will not be able to engage in a meaningful settlement conference before determining the amount of Plaintiff's loss from the fire at issue in this insurance coverage case. Plaintiff's insurance policy includes an appraisal process for resolving any dispute between the parties over the amount of loss. However, the parties are unable to proceed with the appraisal process due to disputes over the selection of Plaintiff's appraiser and an umpire.

Specifically, Plaintiff has filed a Renewed Motion for Court-Ordered Umpire ("Motion for Umpire") [DE 43] while Defendant challenges Plaintiff's selection of an appraiser through its Motion to Disqualify Jay Hatfield of Indiana Public Adjusting as

Plaintiff's Appraiser ("Motion to Disqualify") [DE 47]. Both motions are ripe and ready for the Court's review.

## I. RELEVANT BACKGROUND

This case arises from a fire in June 2016 at a hotel and restaurant owned by Plaintiff. Plaintiff's operative amended complaint raises counts of breach of contract, consequential damages, and bad faith against Defendant—its insurance company.

Shortly after the fire, Plaintiff hired Jay Hatfield of Indiana Public Adjusting as its public adjuster. In that role, Mr. Hatfield assisted Plaintiff with its insurance claim for almost two years handling all claim communications and payments. Mr. Hatfield served as Plaintiff's representative and advocated for Plaintiff in the claims process. He was the primary, if not only, person communicating with Defendant about Plaintiff's claims during that time. For that work, he was paid based on a percentage-based fee. Notably, Mr. Hatfield's communications with Defendant included a letter dated September 1, 2017, outlining his beliefs that Defendant had mistreated Plaintiff in this process and had acted in bad faith. [DE 47-4].

When Plaintiff terminated Mr. Hatfield as its public adjuster, it then appointed him as its appraiser for purposes of the Appraisal Process in its insurance policy. Plaintiff contracted to pay Mr. Hatfield at an hourly rate for his appraisal services.

The Appraisal Provision of Plaintiff's policy states:

E. Loss Conditions

The following conditions apply in addition to the Common Policy
Conditions and the Commercial Property Conditions: . . .

> 2. Appraisal
>
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a. Pay its chosen appraiser; and
>
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

[DE 47-1 at 53]. The Appraisal Provision requires each party to select a competent and impartial appraiser and then allows either party to ask a court select an umpire if the two appraisers cannot agree on one.

Here, the parties agree that an appraisal is necessary to determine the amount of loss from the fire. Defendant hired an appraiser that Plaintiff does not challenge. However, Defendant challenges the ability of Plaintiff's selected appraiser, Mr. Hatfield, to serve impartially because of his long service as Plaintiff's public adjuster. As such, the appraisers have not yet attempted to choose an umpire or otherwise proceed with the substantive work of the appraisal.

## II. ANALYSIS

As a preliminary matter, Plaintiff's Motion for Umpire is premature. Plaintiff has presented no evidence to suggest that the parties' appraisers have reached an impasse

in identifying an umpire—a condition precedent under the Appraisal Provision of the Policy for seeking a court order naming an umpire. [*See* DE 47-1 at 53 ("The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.")]. Plaintiff has not shown that the appraisers even tried to select an umpire. Moreover, such an effort is likely impossible at this time because Plaintiff's selection of Mr. Hatfield as its appraiser remains up in the air in light of Defendant's pending Motion to Disqualify. Therefore, the Court will turn its attention to Defendant's Motion to Disqualify.

Defendant argues that Mr. Hatfield is not—and cannot be—an impartial appraiser and should therefore be disqualified from the Appraisal Process. Under Indiana law, public adjusters are certified by the State and must comply with requirements that ensure their competence and capability as advocates for the insured they represent. *See* Ind. Code § 27-1-27-3, *et seq.* A public adjuster's actions, as the agent of an insured party, are imputed to the insured party they represent. *See Meridian Sec. Ins. Co. v. Hoffman Adjustment Co.*, 933 N.E.2d 7, 12 (Ind. Ct. App. 2010). No one disputes that Mr. Hatfield served as Plaintiff's agent in his role as its public adjuster. However, Defendant's Motion to Disqualify poses the question of whether Mr. Hatfield—who served as Plaintiff's agent and advocate with regard to the insurance claim directly at issue in the appraisal—is impartial and therefore qualified to serve as Plaintiff's appraiser under the Appraisal Provision of the insurance policy.

Clearly, an appraiser with a financial interest in the outcome of the appraisal is not impartial. *Shree Hari Hotels, LLC v. Soc'y Ins.*, No. 1:11-CV-01324-JMS, 2013 WL 4777212, at *2 (S.D. Ind. Sept. 5, 2013) (disqualifying Mr. Hatfield himself in another appraisal case finding his payment on a contingency basis created a biased, financial interest in the appraisal). Plaintiff establishes that Mr. Hatfield would be paid on an hourly basis in this case for his appraisal services suggesting no direct, pecuniary interest to disqualify him. Even without a pecuniary interest, however, Mr. Hatfield may not qualify as impartial under the Appraisal Provision.

"While prior service of an appraiser does not disqualify him as a matter of law, the fact that such appraiser had previously been employed by either the insurer or the insured is a circumstance that may properly be considered in determining whether he is disinterested." *Farmers' Conservative Mut. Ins. Co. v. Neddo*, 111 Ind. App. 1, 40 N.E.2d 401, 408 (1942). "Previous service, together with other circumstances, may disqualify." *Id.* (citations omitted).[1] Other courts have found that persons that served in advocacy roles for a party cannot satisfy an impartiality requirement in matters related to the same case. *See Verneus v. Axis Surplus Ins. Co.*, No. 16-218-63-CIV, 2018 WL 4150933, at *3 (S.D. Fla. Aug. 29, 2018) (striking appraiser who had served as expert witness in same

---

[1] In *Neddo*, the court affirmed a trial court's decision to permit the jury to determine if the defendant insurance company's appraiser was disinterested where the appraiser had been employed within a week after the particular fire to adjust the loss involved. 40 N.E.2d at 408. In his role as adjuster, the appraiser in *Neddo* also investigated whether the policy had been violated and concluded that it had. *Id.* Given the procedural posture of the case, the *Neddo* court did not need to determine whether the appraiser was impartial or disinterested. Yet with facts similar to those in this case, the *Neddo* court established a standard for evaluating the impartiality of appraisers who served as adjusters regarding the same insurance claim.

5

lawsuit); *Verneus v. Axis Surplus Ins. Co.*, CASE NO. 16-21863-CIV-MARTINEZ/GOODMAN, 2018 WL 3417905, at *7 (S.D. Fla. July 13, 2018) (striking appraiser who had represented insured as public adjuster in fire-related case, prepared original appraisal as adjuster, and was paid a percentage of the valuation for his appraisal work); *Owners Ins. Co. v. Dakota Station II Condo. Ass'n, Inc.*, 443 P.3d 47, 52–53 (Colo. 2019) (vacating appraisal award for further consideration on the appraiser' impartiality); *see also United States v. Blitch*, 622 F.3d 658, 664 (7th Cir. 2010) (requiring impartial jurors); *see generally Bakalis v. Golembeski*, 35 F.3d 318, 325-26 (7th Cir. 1994) ("a body that has prejudged the outcome cannot render a decision that comports with due process").

To establish Mr. Hatfield's impartiality here, Plaintiff focuses on his valuation methodology, which Plaintiff describes—without supporting evidence—as "determin[ing] the value of a loss using nothing about the actions of the parties during the claim, whether he likes the other appraiser or does not like the other appraiser." [DE 49 at 2]. But Mr. Hatfield's feelings about Defendant's appraiser are not at issue here. Instead, Defendant is concerned about Mr. Hatfield's explicitly reported "beliefs" regarding Defendant's handling of Plaintiff's insurance claim. In a letter dated September 1, 2017, and addressed to Defendant's independent adjuster, Mr. Hatfield opined that Defendant and/or its consultants (1) acted in bad faith; (2) purposely treated Plaintiff unfairly; (3) was misled by its independent adjuster; (4) benefited from reports that were wrongfully altered; (5) denied certain claims for coverages without

6

cause; (6) improper stalled and delayed its work on Plaintiff's claim; and (7) conducted unfair, biased investigations. [DE 47-4 at 2–3]

Plaintiff asks the Court to accept that Mr. Hatfield's valuation methodology would allow him to impartially assess the amount of loss in this case despite these negative opinions about Defendant's handling of Plaintiff's claim. Plaintiff notes that Mr. Hatfield reached no opinion about the value of Plaintiff's loss while working as Plaintiff's public adjuster. As such, Plaintiff seems to suggest that Mr. Hatfield has no interest in presenting an appraisal favoring it over Defendant. Yet, Plaintiff has not accounted for Mr. Hatfield's professional interest in affirming the substance of his opinions against Defendant. Even though Mr. Hatfield does not have a specific loss valuation of his own to target or otherwise affirm, he could inadvertently appraise Plaintiff's loss higher based on his knowledge of the issues surrounding the claim.

Tangentially, Plaintiff uses Mr. Hatfield's familiarity with its claim to argue that using him as its appraiser would increase the efficiency of the Appraisal Process. Defendant's motion, on the other hand, suggests that allowing Mr. Hatfield to serve as Plaintiff's appraiser would likely delay this case unnecessarily because Defendant would probably file a motion to vacate the appraisal award or something similar to address the same question of impartiality raised in its instant Motion to Disqualify. While Mr. Hatfield's familiarity may speed things along a bit, his familiarity is also the primary source of concern about his impartiality. Therefore, ensuring an impartial

appraiser before the Appraisal Process begins is more likely to save time and resources for the parties and this Court.

In the end, the Court is not persuaded that Mr. Hatfield can be impartial even if he intends to be. With all deference to Mr. Hatfield's professional competence and integrity, the Court is not particularly worried that he will opine against Defendant intentionally in his appraisal. It is the unconscious or implicit bias Mr. Hatfield's experience as Plaintiff's adjuster could foster that raises red flags that cannot be ignored.

To allow Mr. Hatfield to serve as Plaintiff's impartial appraiser after he advocated for Plaintiff as its public adjuster would be like a new judge not recusing himself from a case in which she had previously advocated for one of the parties in the same case before taking the bench. The judicial codes of conduct preclude such conflicts and the Appraisal Provision's impartiality requirement similarly precludes Mr. Hatfield's service as Plaintiff's appraiser here. Indeed, any efficiency potentially gained by Mr. Hatfield's familiarity with this case would be outweighed by the risk of an inadvertently unfair appraisal process.

### III. CONCLUSION

As demonstrated above, Plaintiff has failed to show that Mr. Hatfield qualifies as an impartial appraiser of Plaintiff's loss despite his valuation methodology because of the effects of implicit bias arising from his service as Plaintiff's public adjuster and advocate. Therefore, without reaching any conclusion as to Mr. Hatfield's competence

as an appraiser generally, the Court **GRANTS** Defendant's Motion to Disqualify. [DE 47]. Plaintiff shall select an alternate competent and impartial appraiser on or before **September 6, 2019**. The parties will then comply with the remaining parts of the Appraisal Provision set forth in Plaintiff's insurance policy. [*See* DE 47-1 at 53]. The appraisal shall be completed by **October 7, 2019**. The parties shall jointly file the Appraisal Award by **October 14, 2019**.

The Court **SETS** this case for a telephonic scheduling conference on **October 22, 2019**, at **11:00 a.m. (E.D.T.)** to determine the status of the Appraisal Process and schedule a judicial settlement conference as previously ordered by the Court. [*See* DE 38, DE 39]. The Court will call all counsel listed on the docket sheet unless it is notified that specified attorneys need not be contacted. If, at the time of the scheduled conference, you will not be at the telephone number identified on the docket please contact chambers.

Lastly, the Court **DENIES AS MOOT** Plaintiff's Motion for Umpire [DE 43] to allow the appraisers a chance to agree upon an umpire as provided in the Appraisal Provision.

**SO ORDERED** this 13th day of August 2019.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge