UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

VIDHI, LLC d/b/a CLARION INN
MICHIGAN CITY,

          Plaintiff,

   v.                                      CAUSE NO. 3:18-CV-451 DRL-MGG

ARCH SPECIALTY INSURANCE
COMPANY,

          Defendant.

OPINION AND ORDER

In the early morning of June 18, 2016, a restaurant kitchen fire spread to the Clarion Inn—a hotel owned by Vidhi, LLC. The fire damaged the building and business personalty and caused business income loss. Arch Specialty Insurance Company paid Vidhi roughly $1.2 million for its losses. Dissatisfied with this amount, and wanting another $5.4 million, Vidhi sued the insurer for breach of contract and bad faith. Arch requests summary judgment. The court grants it.

BACKGROUND

On April 4, 2016, Vidhi purchased the Clarion Inn in Michigan City, Indiana. Arch issued to Vidhi a commercial insurance policy [ECF 99-6, 99-7] covering the property from April 4, 2016 to April 4, 2017. The policy provided $6,825,000 in building coverage, $500,000 in business personalty coverage, and $600,000 in business income coverage.

A fire occurred in the kitchen of the Clarion Inn's restaurant at around 2:00 a.m. on June 18, 2016. Vidhi made a timely claim for the fire loss to Arch. On June 20, 2016, Arch assigned York Risk Services (York) to fully adjust the claim. York inspected the Inn that day with Vidhi's member manager, Raj Patel. On June 21, 2016, York inspected the Inn again with a fire origin and cause investigator.

Vidhi retained Jay Hatfield of Indiana Public Adjusting, Inc., to assist with the claim. On June 28, 2016, York inspected the Inn again with Mr. Hatfield and consultants from Grecco Construction Services and RCF Salvage. By September 23, 2016, Arch had issued two $100,000 advance payments. Mr. Hatfield, on behalf of Vidhi, and Mr. McLaren, on behalf of Arch, communicated over the two-year claims process to address disputes over the amount of loss and other coverage-related issues.

On June 12, 2018, Vidhi filed this suit for breach of contract and bad faith. Vidhi sought the appointment of an umpire for an appraisal provided in the policy as a remedy when insured and insurer cannot agreement on an amount of loss. Motion practice followed. The court disqualified Vidhi's first named appraiser (Mr. Hatfield) and resolved a dispute regarding the umpire for the appraisal panel. Thereafter the appraisal panel issued an award [ECF 103-14].

The appraisal award determined the replacement cost value (RCV) and actual cash value (ACV) of the damage to the building, the damage to business personal property, the loss of business income, and the total value of Vidhi's building and business personal property at the time of the fire:

Appraisal Item (1): the replacement cost value and actual cash value of the damage to Vidhi's building resulting from the June 17, 2016 fire.

| Replacement Cost: | $1,290,196.16 |
|---|---|
| (Depreciation) | $424,484.61 |
| Actual Cash Value: | $865,711.55 |

Appraisal Item (2): the replacement cost value and actual cash value of the damage to Vidhi's business personal property resulting from the June 17, 2016 fire.

| Replacement Cost: | $395,550.00 |
|---|---|
| (Depreciation) | $77,015.00 |
| Actual Cash Value: | $318,535.00 |

Appraisal Item (3): the loss of business income resulting from Vidhi's inability to operate the hotel and restaurant during the reasonable time needed to repair the damage to its property.

Loss of Business Income—Hotel:

| 30 Day Period 1 (beginning June 20, 2016, which is 72 hours after loss on June 17, 2016, and ending July 19, 2016) | $102,678.32 |
|---|---|

| | |
|---|---|
| 30 Day Period 2 (July 20, 2016 - August 18, 2016) | $100,066.35 |
| 30 Day Period 3 (August 19, 2016 - Sept. 17, 2016) | $64,209.71 |
| 30 Day Period 4 (Sept. 18, 2016 - Oct. 17, 2016) | $43,750.13 |
| 30 Day Period 5 (Oct. 18, 2016 - Nov. 16, 2016) | $17,569.06 |
| 30 Day Period 6 (Nov. 17, 2016 - Dec. 16, 2016) | ($19,090.45) |

Loss of Business Income—Restaurant:

| | |
|---|---|
| 30 Day Period 1 (beginning June 20, 2016, which is 72 hours after loss on June 17, 2016, and ending July 19, 2016) | $0.00 |
| 30 Day Period 2 (July 20, 2016 - August 18, 2016) | $0.00 |
| 30 Day Period 3 (August 19, 2016 - Sept. 17, 2016) | $0.00 |
| 30 Day Period 4 (Sept. 18, 2016 - Oct. 17, 2016) | $0.00 |
| 30 Day Period 5 (Oct. 18, 2016 - Nov. 16, 2016) | $0.00 |
| 30 Day Period 6 (Nov. 17, 2016 - Dec. 16, 2016) | $0.00 |

Appraisal Item (4): the total replacement cost and actual cash value of Vidhi's building at the time of the June 17, 2016 fire and the total replacement cost and actual cash value of the its business personal property at the time of the June 17, 2016 fire.

Building:

| | |
|---|---|
| Replacement Cost: | $13,588,086.00 |
| (Depreciation) | $4,086,237.00 |
| Actual Cash Value: | $9,501,849.00 |

Business Personal Property:

| | |
|---|---|
| Replacement Cost: | $886,618.01 |
| (Depreciation) | $149,180.04 |
| Actual Cash Value: | $737,437.97 |

The appraisal award specified that these figures were determined "without reference to or reduction on account of the 'coinsurance' provisions of the insurance policy." The award left decisions about the coinsurance provision to the parties' agreement or to the court. Vidhi moved to set aside the appraisal award, but the court denied the motion.

With the binding appraisal award in hand, Arch made additional payments after applying the 90 percent coinsurance provision of the policy (contested and explained below). Before the appraisal, Arch paid Vidhi $1,193,292.09—$685,924.39 for building coverage, $208,227.70 for business personal property coverage, and $299,140.00 in business income loss. After the appraisal award, Arch paid Vidhi

an additional $83,801.14—$34,134.09 for building damage, $39,623.93 for business personal property damage, and $10,043.12 for business income loss—after applying the coinsurance provision. In total, Arch paid $1,277,093.23. Despite the appraisal award's decision not to award more, Vidhi claims that Arch breached its policy by mismanaging the proof of loss process and applying the coinsurance provision in the policy, and otherwise acted in bad faith to delay payment. Vidhi sought over $5 million more when this case began, though the appraisal award trimmed that position significantly.

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in its favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

Summary judgment requires the court to separate the wheat from the chaff and determine whether a triable issue remains for a reasonable jury. *See Waldridge*, 24 F.3d at 920. There's a fair amount of chaff here. In fairness, both sides contribute to making the harvest of arguments in this summary judgment motion more cumbersome and delaying today's ruling.[1] That said, the court first addresses Vidhi's request to disregard exhibits *en masse* as hearsay and then turns to the merits.

A.      *Request to Disregard Arch's Summary Judgment Exhibits.*

Vidhi asks the court to disregard a mass of exhibits because they contain hearsay—Exhibits 7-8, 8A, 9-11, 12 (parts 1, 2, 3, and 4), 13-21, 23-31, 31A, 32-33, 33A, 34-35, and 37 [ECF 100-2, 100-3, 100-4, 100-5, 100-6, 100-7, 100-8, 100-9, 100-10, 100-11, 102-1, 102-2, 102-3, 102-4, 102-5, 102-6, 102-7, 102-8, 102-9, 102-11, 102-12, 102-13, 103-1, 103-2, 103-3, 103-4, 103-5, 103-6, 103-7, 103-8, 103-9, 103-10, 103-11, 103-12, 103-14]—and several paragraphs of Arch's statement of material facts because they rely on these exhibits—paragraphs 17-54, 64-89, 92-94, and 97. The court denies this request for rather simple reasons—Vidhi argues the wrong standard, fails to develop an argument beyond a mere kitchen-sink approach, and passes over the foundational declaration of a York representative (Duncan McLaren).

At summary judgment, the court may only consider admissible facts. *See Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 931 (7th Cir. 2018). Affidavits must set out facts that would be admissible in evidence, *see* Fed. R. Civ. P. 56(c)(4), and other documents may offer facts at summary judgment so long as the party

---

[1] Together, the parties sought and received three extensions of time to file their briefs. On Arch's part, it neglected to certify in the motion that the parties conferred in good faith before its filing to streamline the issues and plan the efficient presentation of arguments, as this presider requires. Perhaps the motion's scope would have remained unchanged, though the court wonders why not after reading the briefs. Arch filed over 2,500 pages of exhibits, and some unnecessary, and then without including a separate index identifying and briefly describing each exhibit as required by Local Rule 5-4. That merely makes the court's navigation of the record more time-consuming. Arch's reply exceeded the 15-page limit under Local Rule 7-1(e). Vidhi's briefing presented nearly citation-free arguments. *See Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 848, 852 (7th Cir. 2015) (summary judgment requires the responding party to cite to particular parts of materials in the record, not just refer to them in a statement of facts). The court has elected not to strike the submissions, but these issues merely delayed ruling.

can establish that these facts could be presented in a form that would be admissible, *see* Fed. R. Civ. P. 56(c)(1), (c)(2). The proper question for documents used at summary judgment is whether the facts within them could be rendered admissible, not whether a foundation has been laid already. *See Wragg v. Vill. of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010) ("the form produced at summary judgment need not be admissible"); *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) (federal rules "allow parties to oppose summary judgment with materials that would be inadmissible at trial so long as *facts* therein could later be presented in an admissible form").

Rule 56 permits a "party [to] object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Vidhi never explains why a foundation could not be laid for the 32 exhibits of concern, nor explains why a foundation has not been laid already through the McLaren declaration (for all exhibits except Exhibits 34, 35, and 37). Vidhi says merely that all these 32 exhibits contain hearsay without once pointing out its concerns specifically. When such requests remain disfavored, *see Rodgers v. Gary Cmty. Sch. Corp.,* 167 F. Supp.3d 940, 948 (N.D. Ind. 2016), the court declines to view this *en masse* approach as developed argument.

This isn't just a passing concern. For instance, Vidhi objects to the checks that reflect Arch's payments to Vidhi. No one contests these payments were made, making the objection altogether puzzling, particularly when a foundation has been laid for their admissibility. Vidhi objects to the proofs of loss, though these are centerpieces to the theory of liability and though again a foundation has been laid. These proofs of loss also aren't being submitted to establish that their loss amounts are incontestable truths, only to show the basis for why Arch made certain payments to Vidhi. Vidhi objects to Exhibit 37—in fairness left out of the McLaren declaration, but it turns out to be the very appraisal award that no one contests in its result and for which a foundation is rather self-evident. These are just examples as to why the argument to disregard these exhibits isn't well taken.

Vidhi also objects to a slew of exhibits that have no bearing on today's decision: emails [ECF 100-2; 100-5; 102-2; 102-4; 102-5; 102-6; 103-1; 103-3]; letters [ECF 102-1; 102-12; 103-2; 103-8; 103-12]; portions of the York reports [100-8; 100-9; 100-10; 100-11]; Grecco Construction Consultants draft estimate [ECF 102-13]; JS Held Post Fire Contamination Assessment [ECF 103-5]; Appraisal Demand [ECF 103-9; 103-10] and DBI Appraisal Report [ECF 103-11]. Quite aside from any foundation, save for Exhibits 34 and 35 [ECF 103-11 and 103-12], or the reasonable prospect of a foundation, the court need not strike exhibits that have not factored into its decision. The court denies Vidhi's request to disregard the summary judgment exhibits.

B.      *Breach of Contract.*

As to the merits, the court (sitting in diversity) applies Indiana's choice of law rules. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *Ruiz v. Blentech Corp.,* 89 F.3d 320, 323 (7th Cir. 1996). Both sides cite Indiana law; and, being presented with no conflict that would require reanalysis, the court sees no reason to depart. *See McCoy v. Iberdrola Renewables, Inc.,* 760 F.3d 674, 684 (7th Cir. 2014); *Simon v. United States,* 805 N.E.2d 798, 805 (Ind. 2004).

Under Indiana law, interpretation of an insurance policy presents a question of law to be decided by the court. *See Nat'l Fire & Cas Co. v. West,* 107 F.3d 531, 534-35 (7th Cir. 1997) (citations omitted). An insurance policy is subject to the same rules of judicial construction as other contracts. *State Farm Mut. Auto. Ins. Co. v. Jakubowicz,* 56 N.E.3d 617, 619 (Ind. 2016). The court's job is "to ascertain and enforce the parties' intent as manifested in the insurance contract." *Berkshire Hathaway Homestate Ins. Co. v. Basham,* 113 N.E.3d 630, 634 (Ind. Ct. App. 2018).

"Indiana courts afford clear and unambiguous policy language its plain, ordinary meaning. By contrast, courts may construe—or ascribe meaning to—ambiguous policy terms only." *Erie Indem. Co. v. Est. of Harris,* 99 N.E.3d 625, 630 (Ind. 2018) (citations omitted). An ambiguity doesn't exist in the policy merely because the parties offer different interpretations of its language. *See id.*; *Berkshire Hathaway,* 113

N.E.3d at 634. An ambiguity exists only when the policy's provision proves "susceptible to more than one reasonable interpretation." *Erie Indem.*, 99 N.E.3d at 630 (emphasis omitted). The court interprets "policy terms from the perspective of the ordinary policyholder of average intelligence." *Ind. Farmers Mut. Ins. Co. v. Weaver*, 120 N.E.3d 280, 284 (Ind. Ct. App. 2019); *see also Erie Indem.*, 99 N.E.3d at 630. Only when intelligent policyholders could honestly disagree about the policy's meaning will the court find its terms ambiguous and subject to judicial construction, else the court applies the plain and ordinary meaning of the policy's terms. *See Erie Indem.*, 99 N.E.3d at 630.

> 1.    *Insurance Procurement.*

Vidhi argues that Arch breached the insurance policy by applying the coinsurance provision. Arch argues that the coinsurance provision applies because Vidhi was underinsured according to the policy's plain terms. In a twist of buyer's remorse, Vidhi vaguely argues that the coinsurance provision should not apply because it purchased a policy with coverage limits recommended by Arch's underwriter. This argument falters for two reasons.

First, the argument remains undeveloped at summary judgment. Vidhi raises this issue in a mere two sentences (each sentence separated by four pages of briefing on other subjects). Vidhi never cites a single authority to explain how this point aids its contract claim. Vidhi never cites a single piece of evidence in its brief to support the argument. "[I]t isn't the court's job to find the needle in the haystack, the truffle in the field, or the Waldo on the page." *Litsinger v. Forest River, Inc.*, 536 F. Supp.3d 334, 353 (N.D. Ind. 2021). The court won't develop Vidhi's argument for it. *See Gross v. Town of Cicero*, 619 F.3d 697, 704-05 (7th Cir. 2010); *United States v. Tockes*, 530 F.3d 628, 633 (7th Cir. 2008). The point was waived. *See Tockes*, 530 F.3d at 633.

Second, Vidhi cannot expand its contract claim at summary judgment when this theory rests on a new factual basis, or represents a new claim that would now have detrimental consequences on the case's proper administration. *See Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 808-09 (7th Cir. 2014);

*Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996). Generally, a party may not amend its complaint through summary judgment argument. *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012).

The court first considers "whether [the new claim] changes the complaint's factual theory, or just the legal theories plaintiff has pursued so far." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017). If the new claim changes the complaint's factual theories, the court may construe it as an impermissible attempt to alter the complaint. *See id.* at 859; *Whitaker*, 772 F.3d at 808. On the other hand, if the new claim adds another legal theory based on facts already alleged in the complaint, the court should allow it to proceed "unless the changes unfairly harm the defendant or the case's development—for example, by making it more costly or difficult to defend the case, or by causing unreasonable delay." *Chessie Logistics*, 867 F.3d at 859 (quotations and citation omitted). This protocol prevents unfair surprise and prejudice at a late stage in the proceeding. *See Whitaker*, 772 F.3d at 809; *see also* Fed. R. Civ. P. 1.

This theory about the underwriter and Vidhi's procurement of insurance has no roots in the operative complaint [ECF 20]. Vidhi pleaded no facts that would support this theory. Vidhi never pursued a claim for inducement or sought reformation of the policy. At no time has Vidhi sought to amend its pleading to add a theory about its procurement of insurance. *See* Fed. R. Civ. P. 15. Vidhi alleged only that Arch breached the insurance policy during the claims process—*after* the fire. It said nothing about the process of purchasing the policy two months *before* the fire.

This late argument prejudices Arch, particularly when the record remains ostensibly devoid of facts that identify these so-called representations from some unknown underwriter. Permitting this theory at this late stage, as undeveloped as it proves to be in briefing, and given the work invested in the case to date, would only cause unreasonable delay and make a cumbersome case even more unwieldy and costly. The case cannot proceed on this theory, now also forfeited. *See Chessie Logistics*, 867 F.3d at 860; *see also Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 478 (7th Cir. 2019).

2.      *Management of Proof of Loss Process.*

Arch claims that it paid Vidhi within 30 days of receiving signed proofs of loss with amounts on which the parties agreed or 30 days after an appraisal award. Vidhi argues that Arch misused its proof of loss forms in handling the claim. Vidhi says this violated the insurance policy and Indiana Code §§ 27-4-1-4.5(1), (6), (12).

The insurance policy said Arch would "pay for covered loss or damage within 30 days after [it] receive[s] the sworn proof of loss" so long as Vidhi complies with its obligations and either Arch and Vidhi agree to the amount of loss or the parties secure an appraisal award [ECF 99-7, ARCH_00053, § E(4)(g)]. Arch says on eight occasions during the claims process, it made ten payments to Vidhi for undisputed amounts of loss in accordance with the insurance policy. Arch presents the approved proofs of loss, save seemingly for one, and the checks.[2] Arch paid a total of $1,193,292.09, including $685,924.39 for building coverage, $208,227.70 for business personal property coverage, and $299,140.00 in business income loss.

Vidhi argues that Arch required the company to sign proofs of loss agreeing to Arch's coverage position before distributing funds. Vidhi says it tried to submit proofs for disputed losses before filing this suit, but Arch refused to accept them. Vidhi relies on its public adjuster's declaration (Jay Hatfield). He says he submitted proofs of loss on January 24 and January 26, 2017, but Arch declined them. He says he had already submitted documentation supporting these other losses, but Arch only accepted

---

[2] Unless overlooked, the court cannot seem to locate the proof of loss form for the second advance of $100,000 from September 16, 2016. The parties don't dispute that this advance was paid [ECF 123-2 ¶ 22]. The other payments include the following: an $100,000 advance on building loss on July 14, 2016 [ECF 100-7 at ARCH_00771]; $261,047.43 for building loss on October 6, 2016 [ECF 102-3 at ARCH_00877]; $66,633.00 for business income loss and $191,237.06 for business property loss on February 1, 2017 [ECF 102-10 at ARCH_1108, 1109]; $97,987.67 for building loss on April 18, 2017 [103-4 at ARCH_02148 (pg. 32)]; $40,428.80 for building loss on July 6, 2017 [103-4 at ARCH_03114 (pg. 72)]; $86,460.49 for building loss and $16,990.64 for business property loss on September 8, 2017 [ECF 103-4 at ARCH_03392 (pg. 82), ARCH_03393 (pg. 84)]; and $232,507.00 for business income loss on February 13, 2018 [ECF 103-7 at ARCH_03581]. Arch provides the checks that match these approved losses [ECF 100-6].

proofs of loss prefilled with amounts to which Arch agreed. Vidhi contends that Arch was delaying payments by misusing this proof of loss submission process.

Arch assigned York Risk Services to adjust the claim the summer before. It appears from the record that Vidhi (through Mr. Hatfield) submitted three proofs of loss in January 2017 to York [ECF 102-7, 102-8]. On January 24, 2017, Vidhi sent two—one for personal property loss of $500,000 and one for business income loss of $600,000. Two days later, Vidhi sent another—this one for interim building loss of $960,207.50. Vidhi's public adjuster recognized that "there are supplementals that must be added to it." York discussed these new forms internally—noting that the forms had been altered or that the claims lacked merit based on the documentation to date.

Nothing demonstrates to a reasonable jury Arch's breach of its insurance policy on this front. For one, the policy presupposed either an agreement between the two sides or an appraisal before the 30-day period began to run, and Vidhi has not established on this record that either event occurred, until the later appraisal that Arch then promptly paid. "Indiana courts have repeatedly enforced appraisal clauses in insurance contracts. And the resulting appraisal awards are binding absent exceptional circumstances. . . . This is particularly true when the parties voluntarily submit to an appraisal under the policy." *Villas at Winding Ridge v. State Farm Fire & Cas. Co.*, 942 F.3d 824, 830 (7th Cir. 2019) (citations omitted); *see also Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 875 (7th Cir. 2000) (same).

For another, Vidhi points to nothing in the policy that required Arch to pay for unsubstantiated or disputed claims outside of meeting one of the policy's two prerequisites. York's representative testified that Vidhi could submit a proof of loss that had not been preapproved or prefilled but that Vidhi needed to provide supporting documentation for the claim. York viewed the personal property loss and business income loss represented by these claims as undeveloped or unsupported. Indeed, for example, accountants tasked with developing a figure for business income loss were working to calculate it.

York not just testified to this concern but told Vidhi about it the day after the company submitted its last disputed claim. In a letter dated January 27, 2017, York acknowledged receipt of the forms and wrote Vidhi's public adjuster:

> Please be advised that Arch Specialty Insurance Company neither accepts nor rejects these Sworn Statement[s] in Proof of Loss at this time. These Sworn Statements in Proof of Loss were altered from a document which was prepared by this office for a prior payment that was issued. Furthermore, the documents do not reflect undisputed amounts of the claimed loss components. Further, the amounts reflected on the Sworn Statements in Proof of Loss you submitted are not supported by appropriate documentation, which has been requested on several occasions by Mr. Rick Reisterer [a York adjuster].
>
> We are continuing to evaluate this loss and we will present a Sworn Statement in Proof of Loss to you for the undisputed amounts once those amounts are determined. We will write to you separately to confirm the undisputed amounts and to again identify for you the documentation and information we require from your client in order to conclude our evaluation.

[ECF 102-9].

York not just expressed these concerns once but followed up. On February 6, 2017, York wrote Vidhi's public adjuster again [ECF 102-11]. The message was similar:

> [Y]ou have submitted several Proof of Loss forms on which you have entered dollar amounts that do not reflect any agreed amounts. (You also altered the Proofs signed by the insured on February 1 to add verbiage that was not agreed to, but Arch elected to issue the payments nonetheless.) Arch stands ready to review and consider any claimed loss amounts, but Arch will not issue payments in response to Proofs of Loss that are not agreed or supported by the facts.
>
> . . . If the insured believes additional claimed amounts are supported, please submit documents and other information that you believe support such additional claimed amounts, including any information falling within the categories of information requests we have previously made and which we have recounted below for your convenience, under the heading "Requests for Information."

The letter listed fifteen pieces of information that had been requested but not received, including "income statements and profit and loss statements for [the] hotel" and "priced inventory of all contents included in [the] claim."

Although Vidhi says it previously submitted documentation supporting its claims, the record today fails to support this position. Vidhi never shows the company submitted these documents to Arch (or York) or otherwise demonstrates that the documents it sent Arch addressed the informational needs to evaluate or support these claims. Even Vidhi's public adjuster admitted that one proof of loss still needed "supplementals." Moreover, nothing counters Arch's evidence that these figures remained genuinely in dispute—outside the substantial payments that Arch had already made.

Vidhi points to no policy provision that required Arch to accept every proof of loss, much less to pay every loss reflected on the form regardless of corroboration. The policy required Vidhi to send "a signed, sworn proof of loss containing the information [Arch] request[s] to investigate the claim" [ECF 99-6, ARCH_00033 § E(1)(d)(1)(e)]. Absent an agreement between insured and insurer that facilitated payment of a loss, the policy anticipated a precise mechanism for resolving any potential disagreement—appraisal. "[E]ither [side] may make written demand for an appraisal of the loss" [ECF 99-7, ARCH_00063 § E(2)]. Whatever metaphysical doubt Vidhi tries to erect based on this record, the court finds no genuine triable issue based on the policy's plain language and its plain allowance for appraisal.

Alternatively, Vidhi says Arch's management of the proof of loss process violated the Unfair Claims Settlement Practices Act (UCSPA). *See* Indiana Code § 27-4-1-4.5. This statute defines unfair or deceptive insurance practices, including "(1) [m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue," "(6) [n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear," and "(12) [d]elaying the investigation or payment of claims by requiring an insured, a claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information." *Id.*

The UCSPA neither creates a private cause of action by individuals against an insurance company, *see Neurological Res., P.C. v. Anthem Ins. Cos.*, 61 F. Supp.2d 840, 847 (S.D. Ind. 1999); *Whiles v. Allstate Ins.*

*Co.*, 2005 U.S. Dist. LEXIS 32523, 11 (N.D. Ind. Sept. 9, 2005), nor informs the breach of contract action here. Even so, other than citing the statutes, Vidhi develops no argument to explain how Arch's conduct could be viewed as violative. Vidhi devotes two conclusory sentences on this point, and cites no evidence in its brief on this front; and, once again, the court won't develop the company's arguments. *See Gross*, 619 F.3d at 704-05.

At most, Vidhi seems to argue that Arch, throughout its handling of the claim, never sought the information necessary to investigate the claim or otherwise required an agreement before distributing funds. But the undisputed record shows Arch asked for information about these other proofs of loss; and the policy expressly conditioned loss payments on either an agreement or an appraisal. Vidhi never explains why, under such circumstances, Arch's conduct should be viewed as unfair or deceptive, including within the guise of its contract claim. No triable issue existing for a reasonable jury, the court grants summary judgment on this contract theory.

       3.      *Payment of Full Appraisal Award under the Coinsurance Provision.*

To the extent that disagreements about the losses persisted, the parties engaged in the appraisal process. The appraisal panel rejected more than 98 percent of the amounts claimed by Vidhi, but awarded an additional sum. The court sees nothing on this record that would indicate that there are some other damages than those addressed now by the appraisal award. Arch says it promptly paid the amount owed under the appraisal in accordance with the policy. Vidhi disagrees.

The debate centers around the policy's coinsurance provision. A coinsurance provision allocates risk between the insurer and insured in the event the insured fails to carry insurance up to a certain percentage of the value of property. Such a provision rewards those who insure at close to full value and penalizes those who insure at less than full value. *See, e.g.*, *Monroe Guaranty Ins. Co. v. Backstage, Inc.*, 537 N.E.2d 528, 528 (Ind. Ct. App. 1989); *Quaker Hills, LLC v. Pac. Indem. Co.*, 728 F.3d 171, 183 (2d Cir. 2013). Under this provision, the policy foreclosed payment of "the full amount of any loss if the value of

Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property" [ECF 99-7, ARCH_00055 § F(1)]. Instead, Arch agreed to "pay the amount determined in Step (4) or the Limit of Insurance, whichever is less" [*id.*]. For any remainder, the policy required Vidhi to rely on other insurance or absorb the loss [*id.*].

The parties agree on this much. Before the appraisal, Arch had paid Vidhi $1,193,292.09 ($685,924.39 for building coverage, $208,227.70 for business personal property coverage, and $299,140.00 in business income loss). Vidhi demanded an appraisal. Per court order, an appraisal was done. Vidhi moved to set aside the appraisal award. This motion was denied.

The appraisal award determined the replacement cost value (RCV) and actual cash value (ACV) of the damage to the building, the damage to business personal property, the loss of business income, and the total value of Vidhi's building and business personal property at the time of the fire [ECF 65]. The appraisal award specifically noted that these figures were determined "without reference to or reduction on account of the 'coinsurance' provisions of the insurance policy" and reserved such an issue to the court, absent an agreement between the parties. The insurance policy instituted a 90 percent coinsurance requirement. After the appraisal award, Arch paid Vidhi an additional $83,801.14 ($34,134.09 for building damage, $39,623.93 for business personal property damage, and $10,043.12 for business income loss) after applying the coinsurance provisions of the policy.

There the debate begins. Vidhi argues that Arch has not paid the full appraisal award because the insurer applied the coinsurance penalty when it should not have. The court construes this as argument that Arch failed to cooperate in the appraisal process or breached the insurance contract. Vidhi contends that the coinsurance penalty should not apply to the appraisal award because the policy is ambiguous; and, when eliminated from the equation, Arch would owe Vidhi "an additional $565,137.68 for the building, $142,698.37 for the business personal property, and $19,090.00 for the business income loss."

15

"[C]lear and unambiguous language in an insurance policy should be given its plain and ordinary meaning . . . even if those terms limit an insurer's liability." *Everett Cash Mut. Ins. Co. v. Taylor*, 926 N.E.2d 1008, 1012 (Ind. 2010) (citation omitted). When terms are ambiguous, the court construes it strictly against the insurer. *Id.* An ambiguity doesn't exist merely "because an insured and an insurer disagree about the meaning of a provision, but only if reasonable people could disagree about the meaning of the contract's terms." *Empire Fire & Marine Ins. Co. v. Frierson*, 49 N.E.3d 1075, 1079 (Ind. Ct. App. 2016). Only when ordinarily intelligent policyholders could honestly disagree about the policy's meaning will the court find its terms ambiguous, else the court applies the plain and ordinary meaning of the policy's terms. *See Erie Indem.*, 99 N.E.3d at 630; *Weaver*, 120 N.E.3d at 284.

The parties advance different interpretations of the phrase "value of Covered Property at the time of loss." Vidhi says this could mean replacement cost value, actual cash value, or something else entirely. Arch argues the policy's plain language and points to another provision that addresses the value of covered property: "[Arch] will determine the value of Covered Property in the event of loss or damage as . . . actual cash value as of the time of loss or damage" (except for circumstances not applicable today) [ECF 99-7, ARCH_00054 § E(7)(a)]. The court construes the policy as a whole and adopts an interpretation that harmonizes its various provisions. *See Barrington Mgmt. Co. v. Paul E. Draper Fam. Ltd. P'ship*, 695 N.E.2d 135, 140 (Ind. Ct. App. 1998). Based on the policy's plain language, the "value of Covered Property at the time of loss" unambiguously means actual cash value. There is no ambiguity here; nor are there undefined technical words, local phrases, or terms of art that require extrinsic guidance. *See Ecorp, Inc. v. Rooksby*, 746 N.E.2d 128, 131 (Ind. Ct. App. 2001).

As a fallback position, Vidhi says interpreting this phrase to mean actual cash value still requires Arch to pay more than it has. Vidhi never explains how it calculated its amounts, and the court cannot decipher their origin or the fuzzy math. For instance, Vidhi argues that, using actual cash value, Arch would still owe a minimum of $19,090.00 for business income loss. It hardly seems inappropriate here to

echo an elementary math teacher who gives credit only if one shows his work. In contrast, Arch performed the coinsurance calculations for both replacement cash value and actual cash value to conclude that Vidhi was underinsured [ECF 100-4 at ARCH_00285-88; ECF 103-14]. Vidhi never contests Arch's calculations or points to any specific errors in this "put up or shut up" moment of the lawsuit. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

Indeed, rather than demonstrate a shortfall in Arch's payment of loss, the record reflects that Arch paid more than it needed. Arch used replacement cash value—not actual cash value—in calculating its payment of the appraisal award. The insurer says it did so to avoid disputes over whether Vidhi actually repaired or replaced the property that was the subject of the award. Vidhi doesn't dispute that before this lawsuit Arch paid it $685,924.39 for building coverage, $208,227.70 for business personal property, and $299,140.00 for business income loss (total $1,193,292.09), amounts that Arch calculated using the actual cash value. Vidhi doesn't dispute that after the appraisal award Arch paid it an additional $34,134.09 for building coverage, $39,623.93 for business personal property, and $10,043.12 for business income loss (total $83,801.14), amounts Arch calculated using the replacement cash value. Together that's $1,277,093.23. Vidhi doesn't argue that Arch's calculations were incorrect, only that the coinsurance penalty shouldn't be applied at all. There is no genuine dispute that Arch paid Vidhi the replacement cash value, which is more than the actual cash value it was required to pay under the policy.

No genuine dispute of material fact exists today. Given the clear and unambiguous language of the insurance policy, the coinsurance provision applies and utilizes in this context actual cash value, and no reasonable jury could conclude that Arch paid less than owed under the policy's terms, including after the appraisal award. The court thus grants summary judgment for Arch on this contract theory and thereby the entirety of count 1 of the amended complaint.[3]

---

[3] Certain theories of breach from the amended complaint remain, but Vidhi never defends these theories in response to the summary judgment motion. The court thus considers these theories, if indeed they are separate

C. *Implied Obligation of Good Faith and Fair Dealing (Bad Faith).*

Vidhi packages in count 2 of its amended complaint a claim it entitles "consequential damages." That's a remedy, not a claim. To the extent Vidhi merely recasts its breach of contract claim as a basis to secure consequential damages, on this record Vidhi has not establish a contract breach or its damages flowing as a consequence from that breach. "This burden falls on the plaintiff because damages are an element of a breach of contract action—a plaintiff cannot recover anything without 'proving with reasonable certainty the damages [that] he incurred' due to the breach." *Ent. USA, Inc. v. Moorehead Commc'ns, Inc.*, 897 F.3d 786, 793 (7th Cir. 2018) (quoting *Ind. Bell Tel. Co. v. O'Bryan*, 408 N.E.2d 178, 183 (Ind. Ct. App. 1980)); *see Haegert v. Univ. of Evansville,* 977 N.E.2d 924, 937 (Ind. 2012) ("plaintiff must prove . . . damages resulting from the breach").

To the extent that count 2 hitches its wagon to the allegations of bad faith in count 3, Vidhi fares no better. Indiana law recognizes an implied duty of good faith and fair dealing in all insurance contracts, which requires the insurer to deal in good faith with its insured. *See Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993). This duty prohibits the insurer from "(1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Id.* at 519.

That said, "a good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith." *Id.* at 520. Punitive damages may be awarded only if there is clear and convincing evidence that the insurer "acted with malice, fraud, gross negligence, or oppressiveness [that] was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing." *Id.* (quoting *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 137-38 (Ind. 1988)).

---

from what Vidhi has argued on this motion, abandoned. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008) (abandonment when not argued in summary judgment response).

Other than a brief statement about Arch misrepresenting coverage at the time it issued the policy—an argument left undeveloped and waived in briefing as well as forfeited in the amended complaint given that it concerns only what happened *after* the fire, not *before* it—Vidhi returns to its same contract arguments to establish bad faith. It raises the specter of bad faith from Arch's management of the proof of loss claim process and application of the coinsurance penalty. This record permits no finding of bad faith by a reasonable jury. The court thus grants summary judgment on both counts 2 and 3.

## CONCLUSION

Accordingly, the court GRANTS Arch's summary judgment motion [ECF 98]. This order terminates the case.

SO ORDERED.

March 15, 2023                                           s/ Damon R. Leichty
                                                         Judge, United States District Court